PATRICK H. KELLEY, administrator, *vs.* JORDAN MARSH COMPANY.

Suffolk.    December 9, 1931. — January 7, 1932.

Present: RUGG, C.J., WAIT, SANDERSON, & FIELD, JJ.

*Evidence*, Presumptions and burden of proof, Declaration of deceased persons, Hospital record. *Practice, Civil*, Findings by judge, Exceptions, New Trial. *Statute*, Construction.

The burden of proving the preliminary facts necessary to the admission of the declarations of a deceased person under G. L. c. 233, § 65, is upon the party offering such declarations in evidence.

The general rule is that findings by a trial judge concerning such preliminary facts must stand unless they involve some error of law or are unsupported by the evidence heard by the judge.

At the trial of an action by an administrator against the proprietor of a store for the conscious suffering and death of the plaintiff's intestate, no eyewitness testified as to the manner in which the injuries causing the intestate's death were received, and the plaintiff under G. L. c. 233, § 65, offered declarations by the intestate made before the commencement of the action. In the absence of the jury the trial judge heard evidence showing that the intestate was found severely injured on the sidewalk in front of the store, about twenty-five feet from its door. Several witnesses, including police officers, testified that declarations of the intestate were to the effect that he was struck or pushed on the sidewalk by another pedestrian; other witnesses testified that his declarations were to the effect that the revolving door of the store, through which he was passing, was so rapidly turned by other persons that he was thrown out onto the sidewalk; and other witnesses testified that his declarations were to the effect that, upon his pushing on the door, it suddenly turned with great force, striking him and throwing him out onto the sidewalk. The defendant admitted that the plaintiff would present evidence to show that the door was defective a few hours before and three days after the accident. The judge found that the intestate's declarations were not made in good faith upon his own knowledge and excluded them. *Held*, that

(1) The judge was not required to find that the intestate, when discovered, had been moved from the place where he first fell;

(2) Even if the police officers failed to make a report of the accident as required by a rule of the police department, that circumstance did not require the judge to find that they had been guilty of despoiling, suppressing or concealing evidence, nor require him to disbelieve their testimony;

(3) The findings by the judge were warranted by the testimony and were untainted by error of law; and they must stand.

A judge, hearing a motion for a new trial of an action, cannot be required to pass upon requests for rulings as to matters which might have been raised at the trial, but in his discretion he may pass upon such requests.

At the hearing by the trial judge above described, the defendant, without objection, offered for consideration by the judge, and "to enable . . . [him] to make a finding required by" G. L. c. 233, § 65, a hospital record under § 79, containing a statement by the intestate as to the cause of the accident, which was supported by testimony by an attending physician that the intestate made such statement to him. *Held*, that

(1) It was apparent that the hospital record was offered solely in aid of the judge in determining how to perform the duty resting on him under § 65; and that it was not proffered nor admitted generally, nor as bearing on liability;

(2) There was no merit in a contention by the plaintiff that the statement in the hospital record as to the cause of the injury constituted original and primary evidence of the facts stated because it was a public record;

(3) The plaintiff's contention was not aided by the circumstances that the defendant introduced the record and did not seek to limit its probative force.

Tort for the conscious suffering and death of the plaintiff's intestate. Writ dated April 5, 1928.

The action was tried in the Superior Court before *Sisk,* J. Material evidence, including evidence heard by the judge in the absence of the jury on the question of the admissibility of declarations by the intestate, is stated in the opinion. The judge found that such declarations were not made in good faith upon the intestate's own knowledge, and excluded them; and ordered a verdict for the defendant. He subsequently denied a motion by the plaintiff for a new trial. The plaintiff alleged exceptions.

*P. H. Kelley,* for the plaintiff.

*E. J. Sullivan, (C. B. Barnes, Jr.,* with him,) for the defendant.

Rugg, C.J. This is an action of tort to recover compensation for the conscious suffering and death of the plaintiff's intestate alleged to have resulted from the negligence of the defendant. There was evidence tending to show that the intestate was found severely injured in the late afternoon of a December day on the sidewalk in front of the store of the defendant. The evidence as to the precise place on the sidewalk where she was first seen by any witness subsequent to her injury showed that she was perhaps twenty-five feet from the door of the defendant's store and lying or sitting with her feet in the street on or near the curbing and near a police signal box. According to some evidence, she was being held in a sitting position by some person or by two persons. No eyewitness testified as to the manner in which the injury was received. The plaintiff at the trial depended on G. L. c. 233, § 65, whereby it is provided that a "declaration of a deceased person shall not be inadmissible in evidence as hearsay if the court finds that it was made in good faith before the commencement of the action and upon the personal knowledge of the declarant." Several witnesses testified to declarations as

to the cause of the injury made by the intestate shortly after the injury. One witness, a police officer, testified that she said, "A man hit me and knocked me down." The plaintiff testified that she said, "I got in the door [the revolving door of the store of the defendant] and put my left hand on the rail and pushed it a little way . . . . So seeing that I couldn't force it with my left hand . . . I . . . gave pressure against the side to make it turn and . . . as it went it made a peculiar noise and . . . the first thing I knew the back of the door came round and struck me on the hip and . . . I went through the door down over the stone steps and fell . . . I was completely stunned but did not lose consciousness, I could neither think nor talk. Some passersby then picked me up but I found I could not stand up." Another witness stated that she said: "I went through the revolving door . . . and I went into the door and it was stopped. I couldn't seem to move it. I pushed it . . . and still it didn't yield to my hand and I pushed my body against it and it commenced to go a little bit and . . . all of a sudden it went with terrific force and the back of the door came around and threw me on to the street." The doctor at the hospital testified that "She said she was leaving a department store through a revolving door when door was rapidly revolved by a crowd behind her and she was thrown to sidewalk and was unable to get up." A different witness testified that she said "that while going through the revolving door . . . another person was going out, pushed the door too fast for her, throwing her down a couple of steps to the sidewalk." Another witness, an employee of the defendant, testified that, after being brought into the store subsequent to the accident, she made a statement "about a man knocking her over." The police ambulance was summoned and as soon as practicable the intestate was taken to a hospital in the care of one or more police officers. One police officer testified: "I asked her what was the matter and she told me she was pushed by some man"; she did not say where she was when she was pushed; and another, that he "asked her what happened and she said she had been pushed by a man against the

building." It appeared from the evidence of a sergeant of police that, although it was his duty under the rules of the police department, and perhaps that of the other police officers, to make a report concerning the accident, no report was made by him. No such report was made by any of three such officers who assisted the intestate after her injury prior to the arrival of the ambulance. A report was made by an officer who came with the ambulance and went in it to the hospital with the intestate. It is not necessary to narrate or further to summarize the testimony on which the finding of the judge was made. It was admitted by the defendant for the purposes of the trial that the intestate was in its store on the afternoon in question to the time of the accident; that she was injured and suffered and that her death resulted from the injury; that a witness to be called by the plaintiff would testify that about five hours before the accident to the intestate a woman passed through the revolving door of the defendant's store in question, and "that it then behaved in the same manner in which" the plaintiff contended "that it behaved at the time of this accident and that she was thrown out to the sidewalk to the curbstone," and that proof would be presented by the plaintiff that three days after the accident to the intestate witnesses examined the door and found it defective so that its revolution was impeded.

The trial judge, after examination of notes as to testimony of each witness, said: "I was impressed with this proposition, there is no way of reconciling the stories told by the intestate. Now there are the police officers who appear to be disinterested witnesses, and of course if their story is true that the intestate said what they say she did immediately after the accident then the other story is not in accordance with the fact . . . . The other feature of the case that impressed me perhaps as much as anything else in the case is where did this happen. Did it happen immediately in front of that revolving door? There isn't any dispute on the evidence here but that where the intestate finally fell on the sidewalk there she remained until she was picked up and carried into the store. Now the evidence

of these police officers placing her down by the police box and the distance between that police box and the southern side of that entrance to that store shows that either that she walked there or was carried there, on the evidence" a woman of her age and weight with a broken hip "couldn't walk there and there is no pretence that she did, no evidence, nothing to indicate that she walked or left the place where she fell until she was carried into the store."

Before declarations of a deceased person rightly can be admitted under G. L. c. 233, § 65, the trial judge must make a preliminary finding of the existence of the facts which alone render such declarations admissible. The burden of proving these precedent facts is upon the party who offers such declarations in evidence. Confessedly the declarations here offered in evidence were made before the commencement of the action. That underlying fact need not be further considered. Another of these essential facts was that the declarations were made in good faith. The judge must find this fact to exist or the declarations must be excluded. *Carroll* v. *Boston Elevated Railway*, 210 Mass. 500. *Horan* v. *Boston Elevated Railway*, 237 Mass. 245, 247. *Crowley* v. *O'Donnell*, 238 Mass. 475. Declarations of a deceased person, to be admissible under the statute, must also relate to facts within the personal knowledge of the declarant. That is another fact to be proved to the reasonable satisfaction of the trial judge before such declaration can be admitted in evidence. This express requirement of the words of said § 65 has been emphasized in the decisions. *Little* v. *Massachusetts Northeastern Street Railway*, 223 Mass. 501. *Eldridge* v. *Barton*, 232 Mass. 183, 187. *Warren* v. *Decoste*, 269 Mass. 415, 419.

The general rule has been established that the findings of the trial judge touching the existence of these essential preliminary facts will not be reversed unless they are unjustifiable or involve some error of law. *Slotofski* v. *Boston Elevated Railway*, 215 Mass. 318. *Ames* v. *New York, New Haven & Hartford Railroad*, 221 Mass. 304. *Bodfish* v. *Cross*, 235 Mass. 428. Such findings commonly rest upon the observation of witnesses and a determination by the trial

judge of their capacity to comprehend that which was
originally heard and to report it with reliable accuracy, and
upon his conclusion as to the knowledge of the declarant and
all the factors bearing upon his understanding, honesty of
purpose, and faculty of correctly stating the facts. In short,
the action of the trial judge rests upon circumstances which
cannot be reflected with reasonable precision upon the
printed page. A finding of that nature ordinarily will stand
as conclusive in an action at law if there is any evidence to
support it. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139,
143. It can rarely be ruled as matter of law that the burden
of proof has been sustained. *McDonough* v. *Metropolitan
Life Ins. Co.* 228 Mass. 450, 452. Even in equity, where the
finding of the fact finding tribunal is not reversed unless
plainly wrong, a finding like that here assailed will not com-
monly be reversed, even upon a full report of the evidence,
by this court in the performance of its duty to examine the
evidence and to decide the case according to its judgment,
giving only due weight to the action of the trial tribunal.
*Berman* v. *Coakley*, 257 Mass. 159.

The plaintiff has made a detailed analysis of all the testi-
mony of the several witnesses and has presented an elaborate
argument to the effect that the testimony of all the witnesses
inconsistent with or contradictory to evidence supporting
his contention to the effect that the testimony as to the
declarations of his intestate were admissible was untrust-
worthy or unworthy of belief. He has urged strenuously
that the decision of the trial judge in excluding testimony
as to these declarations was unwarranted. It is not neces-
sary to review these arguments. The case as presented to
the trial judge on this point rested upon the testimony of
several witnesses, all of whom were on the witness stand in
person. There was much variation in the substance of the
declarations of the intestate as thus disclosed. The evidence
of one group of witnesses tended to show such declarations
to the effect that the injury was received on the sidewalk
through being hit or pushed by another pedestrian and had
no possible connection with the defendant. That evidence
was supported by testimony as to the place on the sidewalk

where the intestate was first seen by any of those called as witnesses, indicating that the fall had no connection with the door of the defendant. The evidence of another group of witnesses tended to show such declarations to the effect that a person or persons behind her in the door caused it to revolve too rapidly and thus she was thrown to the sidewalk and injured. In those circumstances there would be no liability on the part of the defendant. *Buzzell* v. *R. H. White Co.* 220 Mass. 129. The evidence of a third group of witnesses tended to show such declarations indicating some trouble with the operation of the door and that thereby the intestate was thrown with violence and injured. That evidence was supported to some extent by the admission of the defendant as to testimony concerning the defective condition of the door. It would be only upon this theory that liability could be fastened on the defendant. *Norton* v. *Chandler & Co. Inc.* 221 Mass. 99. *Nersiff* v. *Worcester County Institution for Savings,* 264 Mass. 228. It is manifest that in this state of the testimony the question for the trial judge was purely one of fact. Its decision depended on observation of witnesses and the weighing of oral evidence. His findings have been set out in full. There is nothing to indicate that he violated any rule of law in reaching his conclusion, that he did not give fair, impartial and just weight to the testimony of the several witnesses, that he failed to draw proper inferences from all that was proved, or that any error was made requiring a reversal of his decision. There was ample evidence to support his determination. *Commonwealth* v. *Russ,* 232 Mass. 58, 69. *Brown* v. *Little, Brown & Co. (Inc.)* 269 Mass. 102, 106.

The trial judge was not required to find that the intestate had been moved from the place where she first fell and that she was not then within a very few feet of the signal box. The case of *Commonwealth* v. *Trefethen,* 157 Mass. 180, 194, had no necessary bearing upon the questions to be decided by the trial judge. Nothing there decided shakes the force of his determination. The circumstance that three of the police officers failed to make a written report of the incident, even if that failure was a violation of a rule of the police

department, did not require disbelief of their testimony. They still might be telling the truth.

It has not been argued and could not be successfully contended that, apart from the declarations of the intestate, there was evidence tending to show that her injury and death resulted from negligence of the defendant.

The plaintiff subsequently filed a motion for a new trial based wholly upon errors alleged to have occurred at the trial. At the hearing upon this motion numerous requests for rulings of law were presented. The motion was taken under advisement by the trial judge and later denied, and all requests for rulings were refused. The questions of law thus sought to be raised might all have been presented at the trial on the merits. The trial judge could not have been required to pass upon such questions of law on a motion for a new trial. In the case at bar he appears to have received and dealt with the requests for rulings. That was within his discretion. The case will be considered on that footing. *Lonergan* v. *American Railway Express Co.* 250 Mass. 30, 38–39, and cases collected. *Harvard Trust Co.* v. *Cambridge,* 270 Mass. 403, 409.

There is no ground for the contention that the police officers ought to have been disbelieved. There is no foundation for the argument that they had been guilty of despoiling, suppressing or concealing evidence. A mere violation of duty in failing to make a report does not destroy their value as witnesses even if it be assumed, which is not clear, that the rule of the police department required a report from each officer and would not have been satisfied by the report of one. The credibility and weight of their testimony were entirely for the trial judge, who appears to have thought them not unworthy of belief. *Commonwealth* v. *Billings,* 97 Mass. 405, 406. *Commonwealth* v. *Snow,* 111 Mass. 411, 417. *Weir's Case,* 252 Mass. 236, 238. Requests for rulings grounded on the action and testimony of the police officers and the weight to be attributed to evidence coming from them were denied rightly.

The first witness called at the trial was a traffic officer. At the close of his testimony it is stated in the exceptions

that the jury were "excused because it then appeared that the declarations of the deceased as to the cause of her injury were to be offered by the plaintiff, and thereafter the following testimony and evidence was introduced by both parties to enable the court to make a finding required by" G. L. c. 233, § 65. Thereafter the defendant without objection introduced in evidence the hospital record of the intestate, which contained this statement: "Patient was leaving department store through revolving door when door was rapidly revolved by crowd behind her. Patient was thrown to sidewalk and was unable to get up." The defendant also called as a witness the hospital doctor, who testified that the statement just quoted was made to him by the intestate. In view of these two facts the plaintiff requested a ruling in substance that the statement in the hospital record as to the cause of the injury constituted original and primary evidence of the facts thus stated because it was a public record, and that the weight and competency of that evidence did not depend upon G. L. c. 233, § 65, as to declarations of deceased persons. The plaintiff states in his brief that in substance this request required the ruling that the entry in the hospital record quoted above constituted *prima facie* evidence that the fact so stated was true. It is apparent from the statement already quoted from the exceptions as to the course of the trial that the hospital record was offered solely in aid of the judge in determining how to perform the duty resting on him under G. L. c. 233, § 65. It was not proffered or admitted generally, or as bearing on liability. It had pertinency to that duty and the defendant cannot be charged with failure to object to it on other grounds. It is provided by G. L. c. 233, § 79, that records kept by certain hospitals "shall be admissible as evidence . . . so far as such records relate to the treatment and medical history of such cases; but nothing therein contained shall be admissible as evidence which has reference to the question of liability." *Inangelo* v. *Petterson*, 236 Mass. 439. *Clark* v. *Beacon Oil Co.* 271 Mass. 27. *Sullivan* v. *Morse*, 271 Mass. 501, 504. This statute by its true construction does not give probative

force to entries in hospital records which as to their admissibility and evidentiary value depend upon other provisions of the statutes. It was not intended thereby to clothe entries in hospital records with a competency to any other extent or in any other way than that provided by G. L. c. 233, § 65. The two sections are in the same chapter. They must be interpreted, if reasonably practicable, so as to constitute an harmonious and consistent body of law. *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass. 8, 18. *Tillson* v. *Springfield*, 258 Mass. 72. The final clause of § 79, to the effect that entries in such hospital records shall not be competent upon the question of liability, forbids the use of declarations of deceased persons in the way here urged. Hospital records do not become admissible as general public records to any greater or other extent than permitted by said § 79. Incompetent evidence introduced in evidence without objection is entitled to its probative force. *Ferris* v. *Ray Taxi Service Co.* 259 Mass. 401. That principle does not aid the plaintiff in the circumstances here disclosed. As already pointed out, this hospital record and the supporting testimony of the hospital physician were offered and received for consideration by the trial judge under said § 65. They have no further scope or effect.

The defendant was not bound by this evidence merely because it introduced the hospital record. A party calling witnesses or offering evidence does not become fettered thereby. It was at liberty thereafter to take any position with respect to the facts as its view of the weight of the evidence required. *Newman* v. *Levinson*, 266 Mass. 264, 267. *Haun* v. *LeGrand*, 268 Mass. 582, 584, and cases there collected.

It is not necessary to consider in further detail the requests for rulings. Most, if not all, of those argued have been discussed. Those not argued are treated as waived. They have all been examined with care. There was no error in denying them.

The granting or refusal of a motion for a new trial rests in the sound judicial discretion of the trial judge. There is no

basis for a claim that there has been abuse of discretion in the case at bar. *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 496–497. *Energy Electric Co., petitioner,* 262 Mass. 534, 538. *Vengrow* v. *Grimes,* 274 Mass. 278.

*Exceptions overruled.*

---

### MEMORANDUM.

On the eighth day of January, 1932, the Honorable JAMES BERNARD CARROLL died at Springfield. He held the office of an Associate Justice of this court from the twenty-seventh day of January, 1915, until the time of his death.